UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIAMALYNN ARNOLD,

       Plaintiff(s),

v.

TORIANO TREADWELL and ANTHONY
THOMAS, doing business as
PHENOMENON PRODUCTIONS, et al.,

       Defendant(s).

_____/

Case No. 2:07-cv-10209

HONORABLE STEPHEN J. MURPHY, III

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(docket 73), DENYING DEFENDANTS' MOTION FOR SANCTIONS (docket 84),
DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (docket 85), DENYING PLAINTIFF'S MOTION TO
STRIKE AFFIDAVITS (docket 100) AND DENYING AS MOOT
PLAINTIFF'S EMERGENCY MOTION FOR AN EXTENSION OF TIME TO
FILE A RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS AND TO TAKE
LIMITED DISCOVERY OF DEFENDANTS' ATTORNEYS FEES SOUGHT (docket 87)**

This is a claim alleging unfair competition in violation of § 43(a) of the Lanham Act, 15

U.S.C. § 1125(a).  Common law claims of violation of privacy and unjust enrichment were

previously dismissed without prejudice by Judge Paul V. Gadola of this Court, and were

subsequently refiled in state court; the state case was met with a summary dismissal.

Defendants have counterclaimed for breach of an alleged release agreement and unjust

enrichment.

According to the Complaint, Plaintiff Diamalynn Arnold is an aspiring fashion model.

Defendants Toriano Treadwell and Anthony Thomas, through their business Phenomenon

Productions (an unincorporated entity that maintains an assumed name with the clerk of

Oakland County), engage in the business of digital photography, web design and model

management and produce an Internet accessible "ezine" known as EyeCandyModeling as well as several websites.

Arnold claims that she agreed to have non-nude, non-sexually explicit photographs taken of her by Phenomenon, in an effort to build her portfolio and advance her modeling career.  She claims that, under their agreement, she was to retain physical dominion over the photographs as well as retain full control and approval over any use or distribution of the photographs.  Arnold alleges that she gave Phenomenon limited permission to place certain images on a website, provided the images were reviewed and approved by Arnold prior to being electronically posted.

Arnold claims that without her approval, knowledge or consent, Phenomenon supplied Defendants Don Diva South, Inc., Harp Productions, Inc., and Harp Promotions, Inc. (the "Harp-Diva Defendants") copies of the images.  The Harp-Diva Defendants then allegedly published both the images and Arnold's name in their "Don Diva Magazine."   Don Diva Magazine, according to the Complaint, is a publication which portrays criminal practices as a lifestyle, sexually demeaning images of women, and violence against the general public as a form of media and entertainment. The Harp-Diva Defendants had a default judgment entered against them and have since settled, leaving Treadwell and Thomas, d/b/a Phenomenon as the only defendants remaining in this action.

The defendants have also filed a motion for Rule 11 sanctions against the plaintiff's attorney.  The grounds for the motion are that plaintiff is not a celebrity, that only a celebrity may maintain a Lanham Act claim for false endorsement, and that the failure of plaintiff's counsel to investigate the facts underlying the plaintiff's claim before filing this action constitute a violation of plaintiff's counsel's obligations to ascertain that his pleadings have evidentiary support and are warranted by existing law or by a non-frivolous argument for

extending, modifying, or reversing existing law or for establishing new law.  The plaintiff countered with an "emergency" motion to extend time and to allow discovery into the defendants' attorneys fees.  The Court stayed briefing on both motions pending hearing on the summary judgment motion and the motion to strike, on the grounds that the Rule 11 motion was not raised during the status conference at which the Court set the briefing schedule for dispositive motions and that the Rule 11 motion was based upon issues that may be resolved in the pending motion for summary judgment.

There are two significant motions presently before the Court as well as a few procedural motions. Defendants Treadwell and Thomas have moved for summary judgment on the entire claim, arguing that Arnold has failed to establish a claim under the Lanham Act and that the state court judgment of summary dismissal on her state law claims operates to preclude Arnold's federal claim here.  Arnold has filed a cross-motion to strike defendants' summary judgment motion on the grounds that it relies on an unpleaded affirmative defense and that it fails to comply with the Court's practice guidelines.  For the reasons discussed below, the Court will deny defendants' motion for summary judgment and deny plaintiff's cross-motion to strike.

Plaintiff filed a supplementary brief and affidavit asserting that Phenomenon's certificate of persons conducting business under an assumed name describes Phenomenon's business as "digital photography, web design and model management." The defendants on the eve of the hearing in this matter filed affidavits asserting that, despite the statement in their certificate to the contrary, Phenomenon has not made any revenue from either model management or web design. The plaintiff has moved to strike these affidavits on the grounds that Rule 56 only permits affidavits from a party moving for summary judgment to be served with the motion, and late affidavits may only be served by

a party opposing summary judgment.  The Court denies plaintiff's motion to strike and will

consider the affidavits.

## RELEVANT LAW

The only count remaining before the Court is Arnold's claim under § 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a).   Section 43(a) states that when any person:

> "uses in commerce any word, term, name, symbol, or device, or any combination
> thereof, or any false designation of origin, false or misleading description of fact,
> or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activities by
> another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another person's goods, services, or
> commercial activities,
> . . .
> shall be liable in a civil action by any person who believes that he or she is or is likely
> to be damaged by such an act.
>
> 15 U.S.C.A. § 1125(a).

## FACTS

For the purposes of the summary judgment motion, the Court views the facts in the

light most favorable to the non-moving party, here the plaintiff.

Defendants Toriano Treadwell and Anthony Thomas are partners in an unincorporated

entity called Phenomenon Productions ("Phenomenon").  Phenomenon, according to its

certificate, is in the business of photography, model management and web design, and

owns and operates several web sites, including eyecandymodeling.com and

ATAmodels.net.

Plaintiff Diamalynn Arnold is an "aspiring model."  For the past few years, however,

she appears to have been employed solely as an exotic dancer at "Trumps," and her

attempts at modeling have met with little success.  She has had no identifiable modeling

4

jobs apart from a single job passing out flyers at an unidentified event.  Nonetheless, the record reflects that she has contacted modeling agencies and made other efforts over several years to launch a modeling career, and claims to have worked for at least on agency, Promotional United, although her relationship with that agency seems to have resulted only in the flyer job mentioned above.  The record also reflects that, despite her employment as an exotic dancer, she has made some efforts to control her image.  She uses a false name in her employment as an exotic dancer.

In 2002, Arnold contacted Phenomenon, after hearing about their website "Eyecandymodeling.com."  Phenomenon took pictures of her during a series of three photography sessions during the summer of 2002, winter of 2002, and summer of 2003. She states that her purpose in participating in the photography sessions was to build her portfolio and allow her to advance her modeling career.  She did not pay for the photographs, and did not pay Phenomenon for the time they spent photographing her, although she did pay for a few prints of some of the photographs.  The photographs range from typical modeling photographs to some that are a bit risque, but they are in no way pornographic and do not display any nudity - in other words, they are not beyond what one might see on the cover of Cosmopolitan magazine.

The parties entered into an oral agreement regarding the pictures. According to the plaintiff's account of this agreement, she was to retain physical dominion over the photographs  and retain full control and approval over any use or distribution of the photographs to others.  The defendants assert that Arnold signed a written release, but Arnold denies signing such a release and no release has ever been found or produced by the defendants, who claim to have had possession of the release.  In  exchange for photography services rendered to the plaintiff, Phenomenon was granted permission to

only post specifically selected images, pre-approved by the plaintiff, on their website eyecandymodeling.com ("Eyecandy").  According to the plaintiff, she did not authorize the transfer or dissemination of her photos to third parties or to post her photographs on any website other than on Eyecandy.  Apparently, only those photographs selected by the plaintiff appeared on Eyecandy, and those photos were among the least risque of those that have been submitted to the Court.

The Eyecandy website provides free access to internet users to view select model's profiles with a limited array of photographs, and charges a membership fee to grant access to users to view the Eyecandy website's galleries, containing thousands of pictures of various models.  Phenomenon also published Arnold's photographs on a second website owned and operated by Phenomenon, "ATAmodels.net.  The ATA website is a free website that exclusively displays photographs taken by Phenomenon and does not charge any membership fees.  Phenomenon asserts that "Phenomenon was not selling any specific photograph or commercial product on the ATA website, rather the website was an alternative medium for Phenomenon to exhibit its photography."   But the plaintiff asserts that she did not grant Phenomenon permission to post her image on the ATA website.

Phenomenon gave at least one photograph of Arnold to Don Diva Magazine and its related entities.  The defendants claim that they did this after Arnold said she wanted "national exposure" but Arnold disputes that, and asserts that the defendants gave Don Diva her photograph to advance the commercial interests of Phenomenon.  According to the plaintiff's complaint, "Don Diva Magazine is a publication which portrays criminal practices as a lifestyle, sexually demeaning images of women, and violence against the general public as a form of media and entertainment."   Apparently, Don Diva's target audience is the prison population.  After receiving Arnold's photograph, Don Diva published

6

it in the "Sticky Pages" of its magazine, and included the words "Try to Concentrate," along with the plaintiff's real name Diamalynn.   Defendants describe this section as a "pictorial" which contained six photographs of other women in addition to the photograph of the plaintiff.   At the beginning of the pictorial, Phenomenon was given credit for the photography.   Prominently displayed on the photograph as published in Don Diva were photography credits for Phenomenon Productions.   There were no words accompanying plaintiff's photograph other than her first name and the words "Try to Concentrate," and no explicit language that the plaintiff was endorsing Don Diva or its magazine.   Don Diva has asserted that it was led to believe by Phenomenon that the plaintiff had signed a release permitting such use.

Arnold's photograph also showed up in at least one advertisement for Don Diva Magazine.   The plaintiff has come forward with no evidence that Phenomenon gave Don Diva permission to use the plaintiff's photograph in any advertising, and the defendants deny that they ever gave such permission.

## MOTION TO STRIKE

The plaintiff has moved to strike the defendants' motion for summary judgment on two grounds.   First, plaintiff argues that the defendants have failed to comply with this Court's practice guidelines and local rules that govern motion practice before the Court.   Second, plaintiff argues that defendants' motion, to the extent that it relies on the First Amendment to the Constitution, relies on an affirmative defense that was not asserted in their Answer.[1]

---

[1]The plaintiff's motion cites Rule 12(f) as authority for striking defendants' motion.  Rule 12(f), however, by its terms applies only to "pleadings" rather than motions or briefs.

I.    Failure to comply with practice guidelines and Local Rule 7.1(c).

The Court's practice guidelines require that a party moving for summary judgment accompany the motion with a "separate statement of undisputed facts sufficient to support judgment for the movant, listing each fact in a separately numbered paragraph with citations to specific pages in the record or accompanying affidavits." The guidelines go on to require that the response to such a motion "must include a counter-statement of disputed facts, listing in separately numbered paragraphs, with specific citations to the record or affidavits, each of the facts in the movant's statement that are disputed."  The plaintiff argues that defendants' failure to comply with these practice guidelines have prejudiced her in that it hampers her in her attempt to comply with the practice guidelines and prepare a competent counter-statement of disputed facts and to identify the facts that are actually alleged to be in dispute. Second, plaintiff argues that the defendants' brief fails to comply with Local Rule 7.1(c) which requires "a concise statement of the issues presented." Plaintiff argues that the defendants have failed to concisely state the issues presented.[2]

Defendants argue that the Court's practice guidelines were only recently posted, and were possibly posted after they filed their summary judgment motion, and they should not be held to comply with the practice guidelines.  The Court agrees, and will not strike the summary judgment motion on this basis.

---

[2]This motion appears to have been prompted by the defendants' motion for sanctions under Rule 11, which was filed 2 weeks after defendants' motion for summary judgment, but which has been stayed by the Court pending hearing on the instant motions.  It seems that both sides have regrettably and unproductively decided to play "hard ball" with each other.

II.   Reliance on Unpleaded Affirmative Defense of the First Amendment

The plaintiff also moves to strike defendants' summary judgment motion to the extent that it relies on the First Amendment of the Constitution, on the grounds that such an argument constitutes an affirmative defense and the defendants' answer does not contain such an affirmative defense.  The plaintiff argues that defendants' summary judgment motion was her first notice that the defendants were asserting the First Amendment as an issue in this matter and that she has been prejudiced by not being able to develop facts regarding the defense in discovery and by not retaining an expert witness on the issue. The defendants argue that the First Amendment merely changes the plaintiff's *prima facie* case.

It is undisputed that defendants' answer does not assert the First Amendment as a defense.  Defendants argue that they are only asserting the proper test for plaintiff's prima facie case under the Lanham Act.  They argue that, while the First Amendment may act as a bar to the right of recovery in some cases, that is not true in the case of Lanham Act claims.  See Defendants' Response to Motion to Strike at 4.  In support of this proposition, the defendants cite *Siegemund v. Shapland*, 324 F. Supp. 2d 176 (D. Me. 2004).  The *Siegemund* case actually undercuts the defendants' argument.  In *Siegemund*, the district court held that exculpatory clause in a will must be raised as an affirmative defense because it limits liability of a personal representative to breaches of duty that constitute "willful default" and "essentially bars recovery for negligence."  *Siegemund*, 325 F. Supp. 2d at 183.   The court rejected the defendants' argument that the clause was "simply a refinement of the applicable standard of care" and held that it was, rather, a limitation on the personal representatives' liability and therefore must be pleaded as an affirmative defense.  *Id.*

9

While the Court has been unable to find any cases dealing with whether the First Amendment is an affirmative defense in Lanham Act cases, it seems that the plaintiff is correct that the First Amendment should be considered an affirmative defense under these circumstances.   First, dicta in similar cases in the Sixth Circuit indicates that the court treats the raising of the First Amendment as an affirmative defense in Lanham Act claims. See *Parks v. Laface Records*, 329 F.3d 437 (6th Cir. 2003) (referring to the First Amendment as a "defense" to a Lanham Act case); *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) (noting that the defendant in a Lanham Act claim "has raised the First Amendment as a defense to all of ETW's claims, arguing that Rush's use of Woods's image in his painting is protected expression").[3]   Second, the policy behind requiring the pleading of affirmative defenses applies here.   The issue of whether the various publications and media that published the plaintiff's image constitute expressive content so that the heightened standard applied by the Sixth Circuit in *Parks* should apply require the development of facts that are not generally relevant to a plaintiff's prima facie case under the Lanham Act.   For these reasons, the Court holds that the defense of the First Amendment in a Lanham Act case is an affirmative defense that should have been pled as such in their Answer.

This holding does not end the inquiry on the motion to strike, however, because the Sixth Circuit has held that strict adherence to the requirements of Rule 8 will not be required if prejudice does not result.   In this case it seems that prejudice will result if the

---

[3]   Defendants' argument that the First Amendment is not listed among the affirmative defenses in Rule 12 of the Federal Rules of Civil Procedure is without merit.   The Rule states that, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including ..." and then goes on to list 19 affirmative defenses.   The use of the term "including" indicates that the list is illustrative, not exclusive.

Court simply waives the requirements of the Rules, because the plaintiff has been deprived of the opportunity to develop facts that would tend to show that the defendants' websites were not the type of expressive content contemplated by the Sixth Circuit in *Parks* that would require *Parks*' level of heightened scrutiny. Therefore, the plaintiff has been prejudiced by the defendants' failure to plead the First Amendment as an affirmative defense in this action. While the Court will not strike defendants' summary judgment motion on this basis, it will deny summary judgment to defendants as discussed below.

## MOTION FOR SUMMARY JUDGMENT

Treadwell and Thomas have moved for summary judgment on several grounds. They argue, first, that the plaintiff cannot establish a prima facie case under the Lanham Act because she is not a public figure or a celebrity, and that such a showing is required to sustain her claim. Second, the defendants argue that the plaintiff cannot show false endorsement where she consented to the defendants' use of her image in connection with their business. Third, the defendants assert that her image was used in an "artistic medium" protected by the First Amendment and there is no "explicit misleading language regarding origin" and that these facts defeat the plaintiff's Lanham Act claim. While not addressed in their "statement of issues presented," defendants also argue in their brief that a finding by a state court judge that the plaintiff's image has no "monetary value" should be accorded preclusive effect in this action, and such a finding bars the plaintiff's Lanham Act claim here. The Court will address each of these contentions.

I.    Does the plaintiff's lack of "celebrity" defeat her claim under the Lanham Act?

The defendants argue that the plaintiff's claim under the Lanham Act is one of false association or false endorsement, where the "mark" at issue is the plaintiff's identity. They argue that, in cases involving the First Amendment, which they assert applies here, the

plaintiff's prima facie case requires evidence that 1) the plaintiff has a protectable interest in her image as a celebrity or public figure, 2) that the defendants' use of her image is a false designation of origin, false or misleading representation of fact, or false or misleading representation of fact that is deceptive as to the plaintiff's connection or association with Phenomenon, and 3) that Phenomenon's use of the photographs has no artistic relevance or explicitly misleads as to the source of the work.  The plaintiff argues that being a "celebrity" is not an element of a claim for false endorsement under the Lanham Act.

For the purposes of their assertion that only a "celebrity" may assert a claim for false endorsement under the Lanham Act, the defendants cite several cases in the Sixth Circuit and in other jurisdictions.  It would be helpful for the Court to briefly survey some of these cases before proceeding to a discussion of the merits of the defendants' contentions.

A.  Lanham Act "False Endorsement" Cases

*Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619 (6th Cir. 2000) involved claim for false endorsement and right of privacy under Kentucky law by a minor character actor against a film studio and a toy manufacturer for creating and marketing an action figure that depicted a character played by the plaintiff in the movie *Predator*.  The movie studio that produced *Predator* licensed to Galoob the right to produce and market a line of Predator toys, including a toy based on "Billy, the Native American Tracker," the character played by William "Sonny" Landham, the plaintiff.  The toy was only 1.5 inches tall and had no eyes or mouth, so it was undisputed that it bore no personal resemblance to Landham, and the creator of the toy testified that he had purposefully avoided any such resemblance. Nonetheless, Landham sued the studio and the toy manufacturer, claiming that the sales of the toy constituted a false endorsement or false association claim under the Landham act and a violation of his right of publicity under Kentucky common law.

12

The court noted at the outset that "[a] false designation of origin claim brought by an entertainer under § 43(a) of the Lanham Act in a case such as this is equivalent to a false association or endorsement claim, and the 'mark' at issue is the plaintiff's identity. *Landham*, 227 F.3d at 626 (citations omitted). "The underlying question to be answered is whether the plaintiff has shown 'that the public believe[s] that 'the mark's owner sponsored or otherwise approved of the use of the trademark." *Id.* (*quoting Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) (*quoting Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir. 1983)).

The court held that summary judgment was appropriate on both of Landham's claims. It held that Landham's claim of infringement of his right of publicity failed because Landham had failed to demonstrate either that his persona had "significant commercial value" or that the "Billy" toy invoked his persona, as distinct from that of the fictional character. It also held that Landham's Lanham Act claim failed. The court applied the eight-factor test used by the Sixth Circuit in determining a likelihood of confusion and found that Landham had failed to show that the buying public was likely to be genuinely confused about whether Landham had endorsed the toy.

*Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003) involved a suit by civil rights icon Rosa Parks against musicians OutKast and producers for using her name in the title of a profanity-laced rap song. Parks asserted a claim under the Lanham Act as well as state law claims of right of publicity, defamation and intentional interference with business relations. Parks Lanham Act claim was premised on her argument that the "Rosa Parks" title of OutKast's song "misleads consumers into believing that the song is about her or that she is affiliated with the Defendants, or has sponsored or approved the "Rosa Parks" song and the "Aquemini" album. *Parks*, 329 F.3d at 446. The Sixth Circuit noted that Section

13

43(a) of the Lanham Act "permits celebrities to vindicate property rights in their identities against allegedly misleading commercial use by others." *Id.* at 445. The court held that "in order to prevail on a false advertising claim under § 43(a), a celebrity must show that use of his or her name is likely to cause confusion among consumers as to the 'affiliation, connection, or association' between the celebrity and the defendant's goods or services or as to the celebrity's participation in the 'origin, sponsorship, or approval' of the defendant's goods or services." *Id.* at 445-46 (citations omitted). The defendants argued that Parks could not possess a trademark right in her name, and that, even if she could, their First Amendment right to free expression outweighs the risk of consumer confusion. The Court held that, as a celebrity she had a property interest in her name "Rosa Parks" akin to a person holding a trademark, just as if she were a famous actor or musician, and that this creates a property right in her celebrity identity. *Id.* at 447.

The Parks court then went on to discuss the issues raised by the musicians' First Amendment defense. After surveying the varying approaches by different circuits when dealing with a first amendment defense in the context of the title of an artistic work, the Sixth Circuit adopted the approach of the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).[4] Using the *Rogers* test, the Sixth Circuit in *Parks* held that a title of a creative work that uses the name of a celebrity is protected from Lanham Act claims "unless it has 'no artistic relevance' to the underlying work or, if there is artistic relevance,

---

[4] *Rogers* was a suit by a film star, Ginger Rogers, against the makers of a film entitled "Ginger and Fred" for false endorsement under the Lanham Act. "Ginger and Fred," by Fredrico, was a film about two former cabaret stars that became known to their fans as Fred and Ginger because they imitated those stars in their act. Rogers complained that the uses of her name in the title mislead consumers about her involvement in the film. The Second Circuit held that while she sufficiently stated a claim that she had a protectable interest in the name "Ginger," that, given the defendants' First Amendment interests in the film, their use of the mark was protected unless it had no artistic relevance to the underlying work or explicitly misled consumers as to the source or content of the work.

the title 'explicitly misleads as to the source or content of the work." *Parks*, 329 F.3d at 448 (quoting *Rogers*, 875 F.2d at 999). Applying this test, the Sixth Circuit reversed the district court's grant of summary judgment to the defendants, holding that there was a genuine issue of material fact as to whether the title "Rosa Parks" was artistically relevant to the content of the song because the song "Rosa Parks" was not actually about Rosa Parks or the events in Birmingham that made her famous, or the ideals of freedom, humanity, dignity and strength, but was rather about the musical group OutKast. The court contrasted this situation to the holding of the *Rogers* court, where the names "Ginger and Fred" were not "arbitrarily chosen just to exploit the publicity value of their real life counterparts, but instead have genuine relevance to the film's story." *Id.* at 455. The Sixth Circuit held that, given the questionable relevance of the name "Rosa Parks" to the subject of the OutKast song, the question of whether the title had any artistic relevance to the content of the song had to be resolved by the finder of fact after an evidentiary hearing and "not by the judge as a matter of law upon the limited record submitted in support of a motion for summary judgement." *Id.* at 459.

The holding of *Parks* applying the *Rogers* test to Lanham Acts claims that implicate the First Amendment was extended beyond the context of titles of artistic works by the Sixth Circuit in *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915 (6th Cir. 2003). *ETW Corp*, involved a suit by the licensing agent of Eldrick "Tiger" Woods against the publisher of artwork created by Rick Rush. Rush had created a painting, entitled "The Masters of Augusta" which purported to commemorate Tiger Wood's victory at the Masters Tournament in Augusta, Georgia in 1997. The foreground of the painting had Tiger Woods in three different poses; to his left was his caddy and to his right, his final round partner's caddy. Behind the clubhouse are the likenesses of famous golfers of the past, including

Arnold Palmer, Sam Snead, Ben Hogan, Walter Hagen, Bobby Jones and Jack Nicklaus. Wood's name was not on the painting, or in its title, but was on an envelope that enclosed limited edition prints of the painting. ETW sued the publisher of the prints under theories of trademark infringement, a Lanham Act claim of false endorsement, and an infringement of Wood's right of publicity under Ohio law. The defendants raised the First Amendment as a defense to all of plaintiff's claims.

The Sixth Circuit held that "where the defendant has articulated a colorable claim that the use of a celebrity's identity is protected by the First Amendment, the likelihood of confusion test is not appropriate because it fails to adequately consider the interests protected by the First Amendment." *ETW*, 332 F.3d at 926. Rather, the court applied the test articulated in *Rogers* and *Parks* and held that a Lanham Act claim for false endorsement by the use of a celebrity's image cannot be sustained if the image has artistic relevance to the underlying work and does not explicitly mislead as to the source of the work.

Applying this test, the *ETW* court first found that Rush's painting constituted artistic expression. It noted that Rush's work consisted of much more than a mere literal likeness of Woods, but consisted of a panorama of Wood's 1997 victory at the Masters, with the clubhouse, his caddy, his final round's partner's caddy, and the leader board. The court found that "[t]hese elements in themselves are sufficient to bring Rush's work withing the protection of the First Amendment" and that the inclusion of the past winners of the Masters reinforce that conclusion. *Id.* at 936. The court went on to find that the use of Wood's image had artistic relevance to the underlying work and did not explicitly mislead as to the source of the work, and that therefore the plaintiff's Lanham Act claim failed. *Id.* at 937. The court went on to affirm summary judgment on ETW's right of publicity claim, finding

16

that Rush's work had substantial informational and creative content that outweighed any adverse effect on ETW's market.  *Id.*  The court also concluded that "Masters of Augusta" contained significant transformative elements which made it especially worthy of First Amendment protection and also less likely to interfere with economic interests protected by Wood's right of publicity.  *Id.* at 938.

There are also several cases from other circuits mentioned in the briefs that are relevant to the Court's analysis.   The Court has already discussed the *Rogers* case from the Second Circuit, above.   In addition, *Waites v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992) was a Ninth Circuit decision holding that the singer could sustain a claim for false endorsement under the Lanham Act for a commercial by Frito-Lay for corn chips that employed a singer that imitated Tom Waites distinctive vocal style.  In doing so, the court held that "a celebrity whose endorsement of a product is implied through the imitation of a distinctive attribute of the celebrity's identity, has standing to sue for false endorsement under section 43(a) of the Lanham Act."  *Waites*, 978 F.2d at 1110.  In *Allen v. National Video, Inc.*, 610 F. Supp. 612 (S.D.N.Y. 1985), the district court held that the use in an advertisement for a video rental chain of an actor who looked like Woody Allen, with tousled hair and heavy dark glasses, and whose physical features and pose evoked the actor, stated a claim for false endorsement.  The court held that the actor sufficiently evoked Allen's persona that it created a likelihood of confusion as a matter of law for purposes of Allen's false endorsement claim.  *Allen*, 610 F. Supp. at 629-30.

B.  Does the Lanham Act require "celebrity" for
purposes of stating a false endorsement claim?

The defendants cite several of the cases analyzed above for the proposition that "[a]s a general rule, the image and likeness of an average person, i.e. a non-celebrity such as the Plaintiff in this case, cannot function as a trademark and thus receives no protection from the Lanham Act."  Summary Judgment Brief at 10.   Many of the cases cited above discuss claims for false endorsement in terms of "celebrity." *See*, *e.g.*, *Parks*, 329 F.3d at 445 (Section 43(a) "permits celebrities to vindicate property rights in their identities against allegedly misleading commercial uses by others" and "[c]elebrities have standing to sue under § 43(a) because they possess an economic interest in their identities akin to that of a traditional trademark holder.") The cases, however, do not squarely address the issue claimed by the defendants that celebrity status is essential to stating a claim under the Act.

In the vast majority of the cases cited by the defendant, the celebrity status of the plaintiff is undisputed.  Rosa Parks was a civil rights icon; Tiger Woods is the most famous golfer of his generation; Woody Allen perhaps the most famous film maker of his.  Thus, the question of whether celebrity status would be required to state a claim in these case was simply not an issue.

Other cases also cited for the proposition that celebrity is required for a Lanham Act false endorsement claim are complicated by the fact that the "likeness" of the plaintiff is not a photograph, but rather some other rendition, and the plaintiff's "celebrity" is used by the court as support for the proposition that the defendant was using a likeness of the plaintiff, rather than of some other person, or that consumers might confuse the defendant's mark for an image of the plaintiff.  For example, in *Waites*, the defendant Frito-Lay did not actually use Tom Waites' voice to market their chips; instead they used a singer who sounded like Waites.  The court considered evidence of Waites' fame and recognition

18

among the public for purposes of determining the likelihood that a listener might be confused into thinking that Tom Waites was endorsing Fritos, rather than some singer who happened to sound like Waites.  In *Parks*, Rosa Park's celebrity was relevant to the plaintiff's contention that the name "Rosa Parks" referred to her, rather than to some other woman named Rosa Parks.  In *Landham*, which is the case that is perhaps closest factually to the instant case, the Sixth Circuit found that the 1.5 inch toy did not infringe upon the plaintiff's Landham Act rights where the plaintiff had not demonstrated that his "persona" had "significant commercial value" or that the toy evoked his persona as opposed to that of the character he played in the movie *Predator*.  Thus, none of these cases are determinative of the issue before the Court today of whether, despite the dicta in these cases, a plaintiff must be a celebrity in order to state a claim under the Lanham Act for false endorsement or false association.  In fact the Court has been unable to find a case in this circuit that squarely addresses the issue.

The issue of whether a  non-celebrity could make a claim for false association under the Lanham Act was addressed squarely in *Condit v. Star Editorial, Inc.*, 259 F. Supp. 2d 1046 (E.D. Cal. 2003).  *Condit* involved a suit by Carolyn Condit, the wife of Senator Gary Condit, for a somewhat scurrilous tabloid article entitled "Condit Wife's Agony" that expressly represented that the story was "Her Own Story."   Carolyn Condit sued the Star, claiming false endorsement or false advertising under the Lanham Act, but defendants argued that the plaintiff's absence of any commercial interests in her identity defeated any claim under the Act.

The district court analyzed the text of the Act and caselaw interpreting the Act.  It found that the purpose of the Landham Act was to protect commercial interests, and that the caselaw has not recognized the extension of Section 43(a) to non-commercial image

19

or identity. *Condit*, 259 F. Supp. 2d at 1051. On the issue of what burden a plaintiff has in stating a Lanham Act claim, the court found that "a majority of circuits require a commercial interest in a mark, that is, at a minimum, a present intent to commercialize a mark," and that in order to sustain her false association claim, the plaintiff must "at least allege an existing intent to commercialize an interest in identity." *Id.* at 1052. The court found that Carolyn Condit failed to allege any intent to use her identity for commercial purposes; any past or existing commercial uses of her image; that she competes commercially in the use of her persona; or that she had suffered commercial injury to such an interest in her image or identity. *Id.* Under these circumstances, the Court found that she did not allege a "reasonable interest" that required protection under the Act. *Id.*

In the absence of binding precedent to the contrary, the Court finds the analysis of the *Condit* court persuasive. The Lanham Act itself does not have a requirement that a plaintiff is a celebrity. Instead, as noted by the *Condit* court, it is designed to protect reasonable commercial interests in marks, including identities.

Here, unlike in *Condit*, the plaintiff has introduced evidence showing a present intent to commercialize her identity. She has offered evidence that she has sought modeling jobs and agreed to posting her image on the Eyecandymodeling website in hopes of generating modeling jobs. She has also testified that she has received work on at least one occasion through a modeling agency, even though such work was passing out flyers. The court holds that such evidence shows, at the minimum, an existing intent to commercialize an interest in identity" for purposes of stating a Lanham Act claim.

II.   Does Plaintiff's consent to appearing on Eyecandymodeling
      defeat her claim for false association under the Lanham Act?

It is undisputed that the plaintiff granted the defendants at least limited consent for posting her photos on their Eyecandy website.  The defendants argue that because the plaintiff consented to the defendants' use of her image on the Eyecandy website that she has consented to "associate herself" with Phenomenon Productions.  They argue that '[b]oth the ATA and Eyecandy websites exclusively exhibit Phenomenon's photography and are directly related to promoting Phenomenon's photography services" and "[t]o the extent that Plaintiff maintains that the appearance of her images on the ATA website is an endorsement, the only entity that Plaintiff could be endorsing is Phenomenon, with whom she admittedly contracted for photography purposes."  Summary Judgment Brief at 15.  Therefore, they claim that because she willingly associated herself with Phenomenon for purposes of appearing on the Eyecandy website, she cannot claim that posting of her photo constitutes a false endorsement or association.

This argument does not succeed for purposes of summary judgment because there is a dispute as to the scope of the plaintiff's consent.  Ms. Arnold asserts that she gave limited consent for the defendants to post specific photos on a specific website for a specific period of time, and did not consent to posting photos on ATA or to providing photos to Don Diva.  Because these disputes may only be resolved by the fact finder, summary judgment is inappropriate on this ground.

III.   Does The First Amendment Bar Plaintiff's Lanham Act Claim?

The defendants argue that Phenomenon's use of the plaintiff's image constitutes artistic expression subject to the First Amendment, and that therefore the more restrictive test of *Parks v. LaFace Records* is the appropriate measure of whether the plaintiff can recover, rather than the likelihood of confusion test usual in Lanham Act claims.  The sum

of their claim for First Amendment protection in the various media at issue here is as

follows:

> Here, Plaintiff's image is used within photographs taken by Phenomenon. Both named Defendants, Tori Treadwell and Anthony Thomas, are artists specializing in photography. Moreover, the websites at issue, which they own and operate, exhibit their photography for the purpose of building their collective reputations and work portfolios. The website at issue does not operate for the purpose of selling the photography on display, nor is Phenomenon a modeling agency. While Phenomenon's photography may not be appealing to everyone, it is clear that their photographs constitute artistic expression. To the extent that such photographs have a commercial element for the promotion of Phenomenon's work, such commercial uses are "inextricably entwined" with expressive elements and cannot be separated out from the fully protected whole. The photographs at issue are thus not commercial speech and do not constitute a commercial transaction. Accordingly, each of the photographs at issue, in which Plaintiff's image appears, are entitled to protection under the First Amendment.

Summary Judgment Brief at 18.

As discussed above, it is the defendants' burden to establish the applicability of its

First Amendment defense. It does not appear that the defendants have done so on these

facts. First, it is not undisputed that there are no commercial transactions, at least on the

ATA website. Rather, the evidence before the Court appears to show that the website had

subscribers who, for the payment of a membership fee, could see additional photographs

of the plaintiff and other "models." Second, the plaintiff has offered evidence showing that,

contrary to the defendants assertions, Phenomenon has held itself out as a modeling

agency. Therefore, the defendants First Amendment argument does not rely on

undisputed facts but rather relies on their own version of the facts. A fact finder may agree

with the defendants, but that is not sufficient for them to win summary judgment.

IV.   Is the judgment of the state court that the plaintiff offered no evidence
      that her image has monetary value entitled to preclusive effect in this Court?

This Court, by order of Judge Paul V. Gadola, dismissed without prejudice Arnold's

state-law based claims of invasion of privacy and unjust enrichment, declining to exercise

supplemental jurisdiction over the state law claims.  Arnold filed a parallel state court action against Phenomenon and against the Don Diva entities, asserting claims of invasion of privacy and unjust enrichment.  The Don Diva entities defaulted in that action as well.

Phenomenon moved for summary judgment on all counts of the complaint and the trial court granted Phenomenon's motion.  On Arnold's privacy claim, the state court construed the claim as a right of publicity claim, citing *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619 (6th Cir. 2000), and held that dismissal of the claim was appropriate because Arnold had failed to come forward with evidence that her image had "monetary value."  Defendants argued in their summary judgment motion that this finding contained in the state court opinion should be accorded preclusive effect in this action and mandated judgment for the defendants here.  The Michigan Court of Appeals, however, has since reversed the trial court on this issue in an unpublished *per curiam* opinion, *Arnold v. Treadwell*, No. 283093, slip op. at 6 (Mich. Ct. App. July 16, 2009), and this argument is therefore moot.

### CONCLUSION

For the reasons stated above defendants' motion for summary judgment (docket 73) is **DENIED**, defendants' motion for sanctions (docket 84) is **DENIED**, Plaintiff's motion to strike defendants' motion for summary judgment (docket 85) is **DENIED**, plaintiff's motion to strike affidavits (docket 100) is **DENIED**, and plaintiff's emergency motion for an extension of time to file a response to defendants' motion for sanctions and to take limited discovery of defendants' attorneys fees sought (docket 87) is **DENIED AS MOOT**.

**SO ORDERED**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 22, 2009

23

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 22, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager